DOMINION CANNERS, LTD. *v.* UNITED STATES (No. 2218). HUBBARD & CO. ET AL. *v.* UNITED STATES (No. 2316).[1]

APPLES CANNED WITH WATER.

Apples, which have been peeled, cored, trimmed, cut up, canned in water which contains part of the juice, and cooked at least enough to sterilize them, were properly held classifiable by the Board of United States General Appraisers, in conformity with the collector's action, under the third provision of paragraph 217, tariff act of 1913, as "fruits preserved or packed in * * * their own juices, if containing no alcohol * * *, " rather than under the second, as "edible fruits, * * * when dried, desiccated, evaporated, or prepared in any manner, not specially provided for."

United States Court of Customs Appeals, February 9, 1924.

APPEAL from Board of United States General Appraisers, G. A. 8566 (T. D. 39256) and Abstract 46213.
[Affirmed.]

*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellants.
*William W. Hoppin*, Assistant Attorney General (*William H. Futrell*, special attorney, of counsel), for the United States.

[Oral argument December 13, 1923, by Mr. Tompkins and Mr. Hoppin.]

Before MARTIN, Presiding Judge, and SMITH, BARBER, and BLAND, Associate Judges; HATFIELD, Associate Judge, participating in the decision by agreement of counsel.

---

[1] T. D. 40025.

BARBER, Judge, delivered the opinion of the court:

These cases were briefed and argued together in this court under stipulation between counsel to the effect that the parties in interest, merchandise, and issues are identical.

The decision of the Board of General Appraisers in No. 2218, hereinafter referred to as the Canners case, is dated September 26, 1922, and in No. 2316, hereinafter called the Hubbard case, August 14, 1923. The first decision quite fully discusses the issue. The second refers to the other as authority with the statement that the additional evidence taken in that case did not justify a different conclusion. In both cases the protests were overruled.

In substance the record shows that apples are brought from the orchards to the factory, where they are washed, peeled, cored, and trimmed, at least quartered and probably cut into somewhat smaller pieces, and the spots or specks taken off; these pieces of apples are then put in tin cans to which water at a temperature of 180° to 200° is added, filling the cans; the can lids are then hermetically sealed on by machinery and the cans run through an exhaust box in which they are subjected to hot steam for about three minutes; they are then placed in a retort filled with water, then or shortly raised to a temperature of 212° (the boiling point), where they remain from six to eight minutes; then they are placed in cooling vats for five or six minutes, then removed, the cans labeled, and in this condition imported.

Pouring the hot water into the cans has a tendency to discolor the fruit. Placing them in the steam box bleaches or brings back its natural color. They are put into the retort of boiling water for the purpose of sterilizing the cans and contents and killing any bacteria that may be present. These operations are not intended to cook the apple to any considerable extent, some witnesses testifying it is not cooked at all; others that the apple is not cooked into apple sauce, but sterilized. The witnesses in substance said that in their opinion only a very small proportion of its juice left the apple and permeated the surrounding water. All agreed that these operations did not reduce the apple to a pulp, but that the pieces preserved the form in which they were placed in the cans; in other words, they did not become pulp. What percentage of the juice escaped from the fruit was not shown. When the cans are opened the liquid is thrown away and the fruit used in the same manner as apples in their natural condition, for the purpose of making pies. The only witnesses heard by the board were called by the importers.

In the Canners case the board in its opinion stated that inspection of the commodity showed that the apple had been practically cooked through, although not reduced to a pulp, and that it appeared that the described processes resulted in the exudation of a considerable

amount of juice from the fruit which remained in the can, and that the preparation to which the fruit had been subjected was sufficient to preserve it for an indefinite time.

A typical can, but not taken from these importations, was opened in this court during the argument in which the fruit appeared to be in the form in which it was placed therein—that is, the tissue was not broken down, but there was a pronounced taste of apple juice in the surrounding liquid.

Upon the evidence as above stated, we can not say that the finding of the board in the Canners case, that the apple had been "practically cooked through although not reduced to a pulp," is not warranted, and as the merchandise in both cases is conceded to be the same, the same observation would apply to the Hubbard case. And it is of course true that the apple is indefinitely preserved and that some of its juice is taken up by the water in the cans.

The collector classified and assessed the merchandise at 20 per cent ad valorem under paragraph 217 of the act of 1913, the applicable part of which we quote:

Apples, peaches, quinces, cherries, plums, and pears, green or ripe, 10 cents per bushel of fifty pounds; * * * all edible fruits, including berries, when dried, desiccated, evaporated, or prepared in any manner, not specially provided for in this section, 1 cent per pound; comfits, sweetmeats, and fruits of all kinds * * * preserved or packed in molasses, spirits, or their own juices, if containing no alcohol, or containing not over 10 per centum of alcohol, 20 per centum ad valorem * * *.

The importers claim it is properly dutiable under the above provision for all edible fruits prepared in any manner, not specially provided for, at 1 per cent per pound.

In the board's decision in the Canners case reference is made to the Wakem & McLaughlin case, Abstract 24840 (T. D. 31316), decided in 1911, in which the classification of blueberries prepared in manner similar to the apples in this case was under consideration before the Board of General Appraisers, and the applicability of paragraph 274 of the tariff act of 1909 was in question. The language of that paragraph so far as it affects any issue in this case was substantially identical with paragraph 217 of the act of 1913 now before us.

In the Wakem case the board in an opinion, the reasoning of which is appealing, concluded that the blueberries were classifiable as edible fruits, preserved or packed in their own juices, under the provisions of the cited paragraph of the act of 1909, and in its decision in the Canners case it is pointed out that inasmuch as the treatment of the apples here is the same as that of the berries in the Wakem case there is no reason for departing from the rule of that case.

It is apparent that paragraph 217 was designed to impose a progressive rate upon fruits, first in their natural condition by the bushel; then if dried, desiccated, evaporated or prepared in any other manner

not otherwise provided for, by the pound; and finally, if preserved or packed in molasses, spirits or their own juices, at a still higher rate. These apples are neither dried, desiccated, or evaporated, but they have been prepared as already appears. Concededly they are preserved by being sterilized and placed in hermetically sealed cans. In other words, they have not only been prepared as claimed by importer but they have been preserved and have been packed in a liquid containing a proportion at least of their own juices, and we think as between the part of the paragraph invoked by the importer and that under which they have been classified by the collector the action of the latter must be sustained. This conclusion finds support in the fact that the interpretation of a like provision of the act of 1909 had obtained before the act of 1913 became law, and it must be presumed that the interpretation of the earlier statute was adopted by Congress when the later one was enacted in the same terms.

The judgment of the Board of General Appraisers is *affirmed.*